UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 22-80002-CR-Singhal/Matthewman

18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

**MARTHE HIPPOLYTE,**

              **Defendant.**
_____/

FILED BY ___KJZ___ D.C.

Jan 6, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

#### The Defendant and Relevant Entities

1. Turning Point Sober Home Corp. ("TPSH") was a corporation formed under the laws of Florida in or around February 2015, with its principal place of business in Palm Beach County, Florida, and held a bank account ending in 4096 at Bank United (the "TPSH Account").

2. Turning Point Marketting, LLC ("TPM") was a limited liability company formed under the laws of Florida in or around October 2015, with its principal place of business in Broward County, Florida, and held bank accounts ending in 7303 at SunTrust Bank ("TPM Account 1") and 7685 at Bank United ("TPM Account 2").

3. Defendant **MARTHE HIPPOLYTE**, a resident of Palm Beach County, Florida, operated and controlled TPSH and TPM (collectively, "Turning Point"). **HIPPOLYTE** was an

authorized signatory on TPM Accounts 1 and 2.

4. Through Turning Point, **HIPPOLYTE** operated several "recovery residences," commonly referred to as "sober homes," in Palm Beach and Broward Counties, in the Southern District of Florida. The homes were located at 777 SW 2nd Avenue, Deerfield Beach, Florida; 631 Linnet Circle, Delray Beach, Florida; 634 Bunting Drive, Delray Beach, Florida; 5611 Pinetree Road, Parkland, Florida; and 219 SW 8th Street, Deerfield Beach, Florida (collectively, the "Turning Point sober homes").

5. Reflections Treatment Center ("Reflections") was located at 5100 Coconut Creek Parkway, Margate, Florida, in Broward County, in the Southern District of Florida. Reflections purported to operate as a licensed substance abuse service provider, that is, it offered clinical treatment services for persons suffering from alcohol and drug addiction. Although corporate records filed with the State of Florida listed Laura Chatman as the sole owner of Reflections, Kenneth Chatman was the true owner and operator of Reflections. Kenneth Chatman managed all aspects of the facility, including hiring and firing personnel, admitting and discharging patients, and making financial decisions.

## Substance Abuse Treatment

6. The U.S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration, Center for Substance Abuse Treatment ("SAMHSA") was tasked with establishing and implementing a comprehensive program to improve the provision of treatment and related services to individuals with respect to substance abuse and with protecting the legal rights of individuals who are substance abusers. 42 U.S.C. § 290aa.

7. "Substance abuse" was defined as "the abuse of alcohol or other drugs." 42 U.S.C. § 290cc-34(4). "Treatment" meant "the management and care of a patient suffering from alcohol

or drug abuse, a condition which is identified as having been caused by that abuse, or both, in order to reduce or eliminate the adverse effects upon the patient." 42 C.F.R. § 2.11.

8. Substance abuse treatment centers provided services, such as individual or group therapy sessions, to assist clients in overcoming their addictions. There were varying levels of treatment provided, including Partial Hospitalization Programs ("PHP"), Intensive Outpatient Programs ("IOP"), and Outpatient Programs ("OP"). PHPs, IOPs, or OPs were permitted to be billed to health care benefit programs when they were medically necessary and provided by, or overseen by, licensed medical professionals.

9. Sober homes were living facilities where clients lived together in a drug-free and alcohol-free environment while working to maintain sobriety. Sober homes generally did not provide medical care or clinical services to their residents; such services were provided at a substance abuse treatment center. When properly managed, sober homes operated as alcohol and drug free residential environments for individuals attempting to abstain from alcohol and drugs, including providing a peer support network of individuals in recovery.

### Bodily Fluid Testing

10. Bodily fluid testing was used to detect recent drug or alcohol use by individuals receiving treatment for substance abuse. Various tests were performed on a client's urine, blood, and saliva. Urine Analysis or urinalysis ("UA") testing complexity ranged from screening tests — also known as point of care ("POC") testing — which provided instant results, to confirmatory testing, which was sent to a laboratory, for more complex analysis. Laboratories also conducted complex analysis on blood and saliva samples.

### Payment for Substance Abuse Treatment and Bodily Fluid Testing

11. Insurance coverage for substance abuse treatment and bodily fluid testing was

available through a number of avenues, including federal health care benefits programs, health plans sponsored by private employers, and health plans offered directly by private insurance companies. Private insurance companies, including Blue Cross Blue Shield ("BCBS"), Cigna, and Aetna (collectively, the "Private Insurers"), offered or administered insurance plans that covered such treatment and testing.

12. Regardless of the type of insurance plan held by a patient, the amount of coverage and terms and conditions of billing and payment were governed by the terms of the patient's insurance documents, and the insurance company administering the plan had the authority, responsibility, and discretion to make coverage determinations and to process and make payments on claims.

13. Under the terms of the Private Insurers' insurance policies, and consistent with state and federal law, the Private Insurers were only responsible for paying claims for services that: (a) were "medically necessary" and actually rendered, (b) were provided by a properly licensed service provider, and (c) complied with the terms of the health care plans, including the obligation to pay co-insurance and deductibles.

14. The Insurance Plans provided guidance to service providers, including physicians, substance abuse treatment centers, and laboratories, for the types and frequency of testing that would be reimbursable. This guidance was based upon policy statements from the American Society of Addiction Medicine ("ASAM"), publications by expert researchers in the area of substance abuse treatment, and policies of federal and state governmental agencies.

### The Florida Patient Brokering Act

15. The Florida Patient Brokering Act made it a felony offense for any person, health care provider, or health care facility, including any state licensed substance abuse service provider,

to: "(a) Offer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the referral of patients or patronage to or from a health care provider or health care facility; (b) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for referring patients or patronage to or from a health care provider or health care facility; (c) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for the acceptance or acknowledgement of treatment from a health care provider or health care facility; or (d) Aid, abet, advise, or otherwise participate in the conduct prohibited under paragraph (a), paragraph (b), or paragraph (c)." Fla. Stat. § 817.505.

**COUNT 1**
**Conspiracy to Violate the Travel Act**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 15 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around February 2015, and continuing through in or around December 2016, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**MARTHE HIPPOLYTE,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with Kenneth Chatman, and others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to violate Title 18, United States Code, Section 1952(a)(3), by using the mail and any facility in interstate commerce with the intent to promote, manage, establish, carry on, and facilitate the promotion, management,

establishment, and carrying on of an unlawful activity, namely, kickbacks and bribes in violation of the State of Florida Patient Brokering Act, Fla. Stat. § 817.505, and thereafter performing and attempting to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, carrying on of such unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

## Purpose of the Conspiracy

3.  It was a purpose of the conspiracy for the defendant and her co-conspirators to unlawfully enrich themselves by: (a) soliciting, receiving, offering and paying kickbacks and bribes in return for recruiting and referring patients to Reflections; (b) submitting and causing the submission of claims to the Private Insurers for substance abuse treatment and bodily fluid testing that was not medically necessary, not reimbursable, and not provided to patients as represented; (c) concealing the submission of false and fraudulent claims to the Private Insurers; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means

The manner and means by which the defendant and her co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

4.  **MARTHE HIPPOLYTE**, through her control of Turning Point, established and operated the Turning Point sober homes, which were purportedly in the business of providing safe and drug-free residences for individuals suffering from drug and alcohol addiction.

5.  To obtain residents for the Turning Point sober homes, **MARTHE HIPPOLYTE** and her co-conspirators paid kickbacks and bribes to recruiters in exchange for soliciting individuals with insurance to reside at the sober homes, attend drug treatment at Reflections, and

submit to regular and random drug testing and substance abuse treatment, so that members of the conspiracy could bill the testing and treatment to the Private Insurers.

6. **MARTHE HIPPOLYTE** arranged, assisted, and participated in arranging and assisting patient travel, including by commercial airplane, from locations outside Florida to locations within Florida, for the purpose of bringing in patients to reside at the Turning Point sober homes.

7. **MARTHE HIPPOLYTE** permitted the residents of the Turning Point sober homes to continue using drugs as long as they attended treatment and submitted to drug testing, notwithstanding that the Turning Point sober homes purportedly were drug-free residences for individuals undergoing treatment for substance abuse.

8. Co-conspirator Chatman and others established Reflections, which was purportedly in the business of providing effective clinical treatment services for persons suffering from alcohol and drug addiction.

9. **MARTHE HIPPOLYTE** solicited and received illegal kickbacks and bribes from Chatman in exchange for referring residents of the Turning Point sober homes with insurance to become patients at Reflections, whereupon Chatman and others billed and caused the Private Insurers to be billed for substance abuse and bodily fluid testing that was procured by the payment of illegal kickbacks and bribes, medically unnecessary, not reimbursable, and not provided as represented.

10. **MARTHE HIPPOLYTE** deposited and caused to be deposited into the TPSH Account and into TPM Accounts 1 and 2 checks from Reflections that were signed in some instances by Chatman, which checks represented the payment of illegal kickbacks and bribes in exchange for the referral of residents of the Turning Point sober homes to Reflections for purported

substance abuse treatment and/or drug testing.

11. **MARTHE HIPPOLYTE** required the residents of the Turning Point sober homes to travel to Reflections multiple times per week to attend purported substance abuse treatment sessions and to submit to drug testing, which Chatman and others could bill to the Private Insurers, in order to continue their residency at the Turning Point sober homes. To ensure that residents attended sessions at Reflections, **MARTHE HIPPOLYTE** and her co-conspirators arranged for van transportation between the Turning Point sober homes and Reflections.

12. **MARTHE HIPPOLYTE** regularly communicated with Chatman by text and phone to discuss, *inter alia*, patients' insurance coverage status; insurance information, such as the identity of a patient's insurer and the membership and group number; arrangements for patients to be transported between the Turning Point sober homes and Reflections; patients traveling by commercial airplane from outside Florida to reside in the Turning Point sober homes and attend treatment at Reflections; the status of patients' treatment at Reflections; the anticipated arrival of new patients at the Turning Point sober homes who would attend treatment at Reflections; the availability of patients residing at the Turning Point sober homes to attend purported treatment sessions and Reflections; and drug use by patients residing at the Turning Point sober homes.

13. **MARTHE HIPPOLYTE** caused the submission of false and fraudulent claims by Chatman to the Private Insurers for Turning Point sober home residents referred to Reflections by **MARTHE HIPPOLYTE** in the approximate amount of $4.5 million that was procured by the payment of illegal kickbacks and bribes, medically unnecessary, not reimbursable, and not provided as represented. The Private Insurers paid the approximate amount of $1.4 million for these claims.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

14. On or about November 30, 2016, Chatman caused the submission of a claim to Florida Blue for PHP services on behalf of a patient referred to Reflections, in exchange for illegal kickbacks and bribes, by **MARTHE HIPPOLYTE**.

15. On or about December 5, 2016, Chatman caused the submission of a claim to Florida Blue for drug testing on behalf of a patient referred to Reflections, in exchange for illegal kickbacks and bribes, by **MARTHE HIPPOLYTE**.

All in violation of Title 18, United States Code, Section 371.

### FORFEITURE ALLEGATIONS
### 18 U.S.C. § 981(a)(1)(C)

1. The allegations contained in this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendant, **MARTHE HIPPOLYTE**, has an interest.

2. Upon conviction of a conspiracy to violate Title 18, United States Code, Section 1952(a)(3), as alleged in this Information, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offense.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth at Title 21, United States Code, Section 853, both of which are made applicable by Title 28, United States Code, Section 2461(c).

JOSEPH S. BEEMSTERBOER
ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

*Alan Medina/GW*
ALLAN MEDINA
DEPUTY CHIEF, HEALTH CARE FRAUD UNIT
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

GARY A. WINTERS
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

*Anthony W. Lacosta* for
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. 22-80002-CR-Singhal/Matthewman |
|---|---|
| v. | |
| MARTHE HIPPOLYTE, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| Defendant. / | **Superseding Case Information:** |

**Court Division**: (Select One)
☐ Miami ☐ Key West ☐ FTL
☑ WPB ☐ FTP

New defendant(s)  ☐ Yes  ☑ No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) **No**
   List language and/or dialect _____

4. This case will take _____ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   0 to 5 days      ☑
   II  6 to 10 days    ☐
   III 11 to 20 days   ☐
   IV  21 to 60 days   ☐
   V   61 days and over ☐

   (Check only one)
   Petty        ☐
   Minor        ☐
   Misdemeanor  ☐
   Felony       ☑

6. Has this case previously been filed in this District Court? (Yes or No) **No**
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? (Yes or No) **No**

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

_[signature]_ for
_____
Gary A. Winters
DOJ Trial Attorney
Court ID No.   A5501852

*Penalty Sheet(s) attached
REV 3/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** MARTHE HIPPOLYTE

**Case No:** 22-80002-CR-Singhal/Matthewman

Count #1:   Conspiracy to violate the Travel Act, 18 U.S.C. § 1952(a)(3)

Title 18, United States Code, Section 371

**\*Max. Penalty**: Five years imprisonment; $250,000 fine, or twice the pecuniary gain or loss; three years' supervised release; criminal forfeiture; $100 special assessment

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 22-80002-CR-Singhal/Matthewman

### BOND RECOMMENDATION

DEFENDANT: Marthe Hippolyte

Personal Surety
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _[signature]_ for
AUSA:   Gary A. Winters

Last Known Address: Wellington, Florida

What Facility:

Agent(s): William Stewart, FBI
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 22-80002-CR-Singhal/Matthewman |
| MARTHE HIPPOLYTE, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

    I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

    After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Howard Sohn, Esq.
*Printed name of defendant's attorney*

_____
*Judge's signature*

U.S. MAGISTRATE JUDGE
*Judge's printed name and title*